FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 04, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TERESA M.,[1]

                    Plaintiff,

          v.

MARTIN O'MALLEY, Commissioner of
Social Security,

                    Defendant.

No.    2:24-cv-00110-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

          Due to post-traumatic stress disorder (PTSD), major depressive disorder, anxiety, attention deficit disorder, bipolar disorder, degenerative disc disease of the cervical and lumbar spine, and seizures, Plaintiff Teresa M. claims that she is unable to work fulltime and applied for disability insurance benefits and supplemental security income benefits. She appeals the denial of benefits by the

_____

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

Administrative Law Judge (ALJ) erred at step two in failing to find her mental impairments to be severe, and improperly evaluated the medical opinion evidence. As is explained below, the ALJ erred. This matter is remanded for further proceedings.

## I.    Background

In June 2020, Plaintiff filed applications for benefits under Title 2 and Title 16, claiming disability beginning January 23, 2012[2], based on the physical and mental impairments noted above.[3] Plaintiff's claim was denied at the initial and reconsideration levels.[4] After the agency denied Plaintiff benefits, ALJ Lori Freund held a telephone hearing in July 2022, at which Plaintiff appeared with her representative.[5] Plaintiff and a vocational expert both appeared to testify but the hearing was not completed because it started late and the vocational expert did not testify.[6]  ALJ Freund held a supplemental hearing in June 2023, and Plaintiff and a vocational expert testified.[7]

---

[2] AR 46. At the hearing Plaintiff's attorney amended the onset date to September 30, 2016.

[3] AR 497, 504, 551.

[4] AR 296, 308, 323.

[5] AR 172-193.

[6] Id.

[7] AR 199-229.

On July 14, 2022, Plaintiff testified that she has not worked since the amended onset date.[8] Plaintiff testified that she has disc disease in her back and had one surgery already and requires a second fusion surgery for her lumbar spine but she had complications after her first surgery and has been scared of doctors since.[9] She had the surgery in 2015 and was in a coma for three days because she was prescribed medication that she had a reaction to and was hospitalized.[10] Plaintiff stated that she thinks her doctors are trying to hurt her because she was fine prior to her getting an MRI but after the MRI she could not walk for three days.[11] She said she cannot see a doctor or nurse without panicking.[12] Plaintiff said she does receive counseling through an app on her phone which allows her to text an "expert" but that her insurance does not cover the treatment.[13]

Plaintiff said she saw Dr. Miguel Santos in 2015 and tried to go to the clinic two years prior but is too afraid of doctors to go.[14] She said she does not take medication because she refuses to take it after the reaction to medication that left

---

[8] AR 180

[9] AR 180-181.

[10] AR 181.

[11] AR 181-182.

[12] AR 182.

[13] AR 182-183.

[14] AR 183.

her in a coma, and that she was awarded benefits from DSHS, after DSHS sent her to see a doctor named Barbara for evaluation two years before.[15] She later confirmed that the doctor was Kathleen Mayers and it was the SSA that sent her to Dr. Mayers.[16] Plaintiff testified that she smokes marijuana three times a week because she is having a hard time mentally.[17] She said that she will use two to three marijuana joints in a month to alleviate pain and uses no other drugs, and that she also uses alcohol two to three times in a month.[18] Plaintiff said she had been arrested for possession of drug paraphernalia but that she tested negative for drugs.[19] She was incarcerated on the drug charge for ten days.[20] She said that in 2016 she took prescribed medication and her heart stopped.[21]

Plaintiff said she could not work because she would have trouble getting out of bed due to physical and mental impairments, and that she also does not have a car.[22] She last worked in 2012 and misses the structure of working but she has

---

[15] AR 184.

[16] *Id.*

[17] AR 185.

[18] AR 186.

[19] AR 186-187.

[20] *Id.*

[21] AR 187.

[22] AR 188.

constant pain and the grandmother who raised her just died.[23] She said she feels

alone and wants to work but that she cannot focus on anything.[24] Plaintiff said her

back pain is always bad but varies, and that on a good day it is a three or four and

on a bad day it is a ten.[25] She said that on average she will have two and a half to

three weeks of bad days a month and that the longest she went was a month and a

half.[26] The ALJ then closed the hearing due to time considerations.[27]

On June 7, 2023, Plaintiff appeared via telephone from the South Boise

Women's Correctional Center with her attorney for a supplemental hearing before

ALJ Freund.[28] Plaintiff testified and a vocational expert testified.[29] Plaintiff

testified that she fell on ice in 2012 and crushed two of her lumbar discs and had

suffered from pain since, as well as PTSD from being in a coma following her back

surgery.[30] She said that she is supposed to have a spinal fusion but is scared to

---

[23] AR 189.

[24] *Id.*

[25] AR 189-190.

[26] AR 190.

[27] AR 191-192.

[28] AR 199-229.

[29] *Id.*

[30] AR 204.

have it.[31] She said she was treated and examined when she was in a correctional

facility in March and had x-rays but no treatment other than Naproxen for her

pain and amitriptyline for depression.[32] She had been incarcerated since December

14, 2022, and had two weeks left to serve and was in for possession of

methamphetamine.[33] Plaintiff denied recent use of meth and said she last used it

in 2012, but was using marijuana three to four times a month.[34] She said she used

marijuana because she did not have insurance and could not afford pain

medication.[35]

Plaintiff said she was awarded benefits in 2014, but the benefits were

terminated because she was scheduled to go to a doctor for a review and was too

scared to go and stated that she had not gone for treatment.[36]  She said that when

she began receiving medical benefits again she reapplied for social security.[37]

Plaintiff was confused regarding the purpose of her hearing and told the ALJ that

she thought she was filing an appeal of her cessation but the ALJ explained that

---

[31] *Id.*

[32] *Id.*

[33] AR 205.

[34] *Id.*

[35] AR 206.

[36] AR 206-207.

[37] AR 207.

the hearing was regarding a new application.[38] The ALJ stated that the application before her was from 2020.[39] Plaintiff said she was receiving mental health treatment from the correctional facility where she was currently incarcerated but that prior to that she was not receiving treatment.[40] She said that she was hoping she could get treatment through the aftercare program when she was released from prison.[41] When she was tested in June 2022, Plaintiff was negative for both methamphetamine and marijuana.[42]

Plaintiff said again that she was scared of pain medication because she overdosed on it, and that she was prescribed nine pills at the same time but should not have been taking them together.[43] She was hospitalized from the reaction to the multiple prescriptions.[44]

Plaintiff said that she was charged with possession of methamphetamine after she was hanging out with her ex-boyfriend and he drugged her drink.[45] She

---

[38] *Id.*

[39] AR 207-208.

[40] AR 208.

[41] AR 208-209.

[42] AR 209.

[43] AR 210.

[44] *Id.*

[45] *Id.*

said in the past she was in prison for bank fraud and went through drug treatment and was working.[46] She said she did not do drugs since her release from federal prison and that she was with the wrong person at the wrong time but that her recent incarceration had grounded her.[47] She said that once she was released she would look into stem cell therapy and pain management, but was still too scared to do another surgery.[48] She said that following her first surgery she was in a coma for three days, needed to learn to walk again, and had amnesia for a year.[49]

Plaintiff said the main symptom that prevents her from working is back pain that radiates into her left leg.[50] She said she did not have a job in prison because she had tried to work at one in the commissary for a month but it exacerbated her back pain.[51] She said that she also has pain and numbness in her fingers bilaterally.[52] Plaintiff said that she had to switch the phone four times during the hearing and that the clinic did an x-ray and told her that she arthritis in her neck

---

[46] AR 211.

[47] *Id.*

[48] AR 212.

[49] *Id.*

[50] AR 213.

[51] *Id.*

[52] AR 214.

and a pinched nerve in her left shoulder.[53] She had the x-rays in March and then went to a physical therapist who gave her exercises to do.[54]

Plaintiff said she was first incarcerated in September 2022, and would be continuing to receive mental health treatment once she was released.[55] She said in prison she was getting treatment and was on amitriptyline which she thought was helpful.[56] She said she feared that she would be given more medication and did not trust doctors to prescribe medication correctly after her coma.[57] She said that in the past she had been prescribed three narcotics, one anti-psychotic, Cymbalta, and a muscle relaxer.[58] Plaintiff said that when she was taking the medications she was having visual and auditory hallucinations.[59] She said that she also has problems with her memory and loses things.[60] She said that as a result of back pain she can stand for 15 to 20 minutes, and will balance back and forth; that she can sit for longer but has to adjust her position because her hands go numb; and

---

[53] *Id.*

[54] *Id.*

[55] AR 216.

[56] *Id.*

[57] AR 216-217.

[58] AR 217.

[59] *Id.*

[60] AR 218.

that she can walk for a mile.[61] She said she cannot lift more than a gallon of milk.[62] She said that at times she needs help to brush her hair.[63]

After the last hearing, the ALJ issued a decision denying benefits.[64] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[65] As to medical opinions, the ALJ found:

- The opinions of state agency evaluator Michael Brown, PhD, to be not persuasive.

- The opinion of state agency evaluator John Wolfe, PhD, that there was insufficient evidence to evaluate the claim as of the date of review to be neither persuasive nor valuable.

- The opinions of state agency evaluator Norman Staley, MD, to be persuasive.

- The opinion of state agency evaluator Paula Lantsberger, MD, that there was insufficient evidence to evaluate the claim as of the date of review to be neither persuasive nor valuable.

---

[61] AR 219-220.

[62] AR 220.

[63] *Id*.

[64] AR 43-64.  Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)-(g), a five-step evaluation determines whether a claimant is disabled.

[65] AR 52-53.

- The opinions of consultative examiner Aril Lien, MD, to be partially persuasive.

- The opinions of consultative examiner Thomas Genthe, PhD, to be not persuasive.

- The opinions of treating source Bailey White, LCSW, to be not persuasive.

- The opinions of consultative examiner Dennis Dych, PhD, to be at most minimally persuasive.

- The opinions of consultative examiner Kathleen Mayers, PhD, to be partially persuasive. [66]

The ALJ also found a letter written by Plaintiff's friend to be not consistent with the objective record.[67] As to the sequential disability analysis, the ALJ found:

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021.

- Step one: Plaintiff had not engaged in substantial gainful activity since her alleged onset date of September 30, 2016.

- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the cervical and lumbar

---

[66] AR 53-57.

[67] AR 57.

DISPOSITIVE ORDER - 11

spine.  The ALJ also found that Plaintiff's mental illnesses were not a severe impairment.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, including specifically Listing 1.00 and 1.15.

- RFC:  Plaintiff had the RFC to perform a full range of work at the light level of exertion but with the following exceptions:

    [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently, could sit for at least 6 hours in an 8 hour workday, could walk for at least 6 hours in an 8 hour workday, and could stand for a total of up to 4 hours in an 8 hour workday. She should avoid climbing ladders, ropes or scaffolds, and unprotected heights.

- Step four: Plaintiff is able to perform her past relevant work as a survey workers as it was actually performed but not as it is generally performed, and is able to perform her past relevant work as a telephone operator both as it was actually performed and as it is generally performed.

- Step five: in the alternative, considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a collator

operator (DOT 208.685-010), routing clerk (DOT 222.687-022), and

parking lot attendant (DOT 915.473-010).[68]

Plaintiff timely requested review of the ALJ's decision by the Appeals

Council and now this Court.[69]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial

evidence or is based on legal error,"[70] and such error impacted the nondisability

determination.[71] Substantial evidence is "more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."[72]

---

[68] AR 49-59.

[69] AR 1-4, 493.

[70] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[71] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. §§ 404.1520(a), 416.920(a),  (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[72] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not

1

### III.    Analysis

2      Plaintiff seeks relief from the denial of disability on two grounds. She argues

3   the ALJ erred at Step Two by failing to find that Plaintiff's mental illness was a

4   severe impairment, and erred when evaluating the medical opinion evidence. The

5   Commissioner argues that the ALJ did not err in finding Plaintiff's mental

6   impairments to be non-severe at step two because she performed the psychiatric

7   review technique and did not err in resolving conflicts in the medical testimony.

8   As is explained below, the Court concludes that the ALJ's error at step two and in

9   evaluating the medical opinions was consequential.  The Court also concludes that

10  the record requires development.

11  **A.    Step Two: Plaintiff establishes consequential error.**

12     Plaintiff argues that the ALJ erred at step two by failing to find her

13  depressive disorder, anxiety disorder, PTSD, ADHD, personality disorder, and

14  neurocognitive disorder to be a severe impairment.[73]  The Commissioner argues

15  that the ALJ did not err in finding Plaintiff's mental impairments to be nonsevere

16  because the ALJ performed the psychiatric review technique and found that

17

18

_____

19  simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*,

20  143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does

21  not indicate that such evidence was not considered[.]").

22  [73] ECF No. 8.

23

DISPOSITIVE ORDER - 14

1    Plaintiff had a mild limitation in each of the four broad areas of functioning.[74] In

2    her reply, Plaintiff counter-argues that the ALJ arrived at her finding that

3    Plaintiff had only a mild limitation in the four areas of function by ignoring

4    relevant objective findings in examinations and focusing on only those finding

5    which supported her conclusions.[75]   The Court agrees with Plaintiff and finds that

6    the ALJ's error was consequential.

7        1.    Standard

8        At step two of the sequential process, the ALJ determines whether the

9    claimant suffers from a "severe" impairment, i.e., one that significantly limits her

10   physical or mental ability to do basic work activities.[76] This involves a two-step

11   process: 1) determining whether the claimant has a medically determinable

12   impairment and 2), if so, determining whether the impairment is severe.[77]

13       Neither a claimant's statement of symptoms, nor a diagnosis, nor a medical

14   opinion sufficiently establishes the existence of an impairment.[78] Rather, "a

15   physical or mental impairment must be established by objective medical evidence

16

17

_____

18   [74] ECF No. 10.

19   [75] ECF No. 11.

20   [76] 20 C.F.R. §§ 404.1520(c), 416.920(c).

21   [77] Id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

22   [78] Id. §§ 404.1521, 416.921.

23

DISPOSITIVE ORDER - 15

from an acceptable medical source."[79] Evidence obtained from the "application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence.[80] If the objective medical signs and laboratory findings demonstrate the claimant has a medically determinable impairment,[81] the ALJ must then determine whether that impairment is severe.[82]

The severity determination is discussed in terms of what is *not* severe.[83] A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to

---

[79] *Id.*

[80] 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019). *See also* 20 C.F.R. § 416.913(a)(1).

[81] "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms)." 20 C.F.R. §§ 404.1502(1), 416.902(l).

[82] *See* Soc. Sec. Ruling (SSR) 85-28 at *3 (1985).

[83] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

work."[84] Because step two is simply to screen out weak claims,[85] "[g]reat care should be exercised in applying the not severe impairment concept."[86]

2.    The ALJ's Findings

When considering impairments at step two, the ALJ found that Plaintiff's mental impairments were not severe.[87]  The ALJ found that Plaintiff had a mild limitation or no limitation in each of the four functional areas.

As to the functional area of understanding, remembering, and applying information, the ALJ noted that in one examination Plaintiff forgot four of four objects after five minutes, but reasoned that she was able to use a computer, drive a car, play games on her phone, play musical instruments, perform simple mathematical calculations, and answer questions at her hearing, which indicated a mild impairment.[88]

As to the functional area of interacting with others, the ALJ reasoned that although Plaintiff's mood was noted to be agitated and irritable, she was able to go

---

[84] *Id.*; *see* SSR 85-28 at *3.

[85] *Smolen*, 80 F.3d at 1290.

[86] SSR 85-28 at *4.

[87] AR 49-51.

[88] AR 49-50.

to church, go shopping, spend time in casinos, and interact with people at her

hearing, which indicated a mild impairment.[89]

As to the functional area of concentrating, persisting, and maintaining pace,

the ALJ found a mild limitation and articulated the following reasoning:

> The claimant reported difficulty with concentration and completing
> tasks (Ex. B4E). The claimant also reported that she is able to go
> shopping and manage her own finances, she spends time watching
> movies and reading, playing games, working on a computer, playing
> musical instruments, and learning new tasks, all of which generally
> require an ability to concentrate, persist, and maintain pace (Ex. B4E,
> B7F/2). She also reported that she is able to follow written
> instructions "100%" and spoken instructions "95%" and that she
> spends time doing "testing games, for which she receives
> compensation", which suggests she is able to complete tasks (Id.). She
> also reported that she is able to manage her own finances, that she
> enjoys doing puzzles and playing games, and that she is able to use a
> computer and drive a car, all of which suggest an ability to
> concentrate and complete tasks (Ex. B4E, B2F/3, Hearing Testimony).
> At her consultative examination she was able to perform Serial 7
> testing and mathematical calculations, she was able to spell WORLD
> backwards, and her concentration was noted to be "average" (Ex.
> B7F/4). Finally, the claimant was able to participate throughout the
> hearing for the duration of the hearing with no apparent difficulty.
> For these reasons, the undersigned finds that the claimant has a mild
> limitation concentrating, persisting, or maintaining pace.[90]

Lastly, the ALJ considered the fourth functional area of adapting and

managing oneself and found a mild limitation, articulating her reasoning that

Plaintiff was able to spend time in the supermarket, perform household tasks,

---

[89] AR 50.

[90] Id.

DISPOSITIVE ORDER - 18

schedule doctor's appointments, and reported in December 2022 that she was "working."[91]

### 3.  Relevant Medical Records

Because the Court is considering the ALJ's evaluation of mental impairments, only those medical records which are relevant will be included.

#### a.  Dr. Brown

On October 29, 2020, at the initial level, state agency consultant Michael Brown, PhD, reviewed Plaintiff's file.[92] Dr. Brown opined that Plaintiff would have a moderate limitation in the following four domains: understand, remember, or apply information; interact with others; and concentrate, persist, or maintain pace.[93] Dr. Brown opined that Plaintiff would have no limitation in the domain of adapting or managing oneself.[94] Dr. Brown opined Plaintiff is moderately limited in the ability to:  understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; and work in coordination with or proximity to others without being distracted by them.[95] Dr. Brown explained the basis of those limitations, stating:

---

[91] AR 50-51.

[92] AR 267.

[93] Id.

[94] Id.

[95] AR 273-274.

Amount of detail clmt provided in response to questions was excessive. Normal rate and inflections. Mood was worried. Clmt is cooperative and friendly. Understood instructions. Appeared attentive and interested. Thought process she was delayed in reaching the point tangential. and circumstantial. Delayed recall 0/4 items after five minutes. Was able accurately repeat the words "pear". Can spell WORLD backward. able to multiple 25x7. Had difficulty following the conversation. 10/20 Friendly, eye contact is good. Spoke in a generally logical, coherent and goal directed manner. Depressed Currently having panic attacks. Performed serial Able to spell forward backward. Perform two different three stage task. 10/20 Concentration is average. Able to perform a three stage task. Digit span 7 number forward 4 backward. Able to recall 3/3 after five min. The claimant retains the capacity to understand and remember simple instructions, Can do three step command.[96]

Dr. Brown opined that Plaintiff is moderately limited in the following social tasks: interact with the general public; accept instruction and criticism from supervisors; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.[97]

        b.    *Dr. Wolfe*

On November 9, 2021, at the reconsideration level, state agency consultant John Wolfe, PhD, reviewed Plaintiff's file.[98] Dr. Wolfe wrote that the evaluation

---

[96] AR 275.

[97] *Id.*

[98] SAR 283.

was over a year old and that there was no current evaluation from which he could assess Plaintiff's current functioning.[99]

       c.    <u>*Dr. Genthe*</u>

On May 20, 2020, Plaintiff was examined by Thomas Genthe, PhD, at the request of the Washington State Department of Social and Health Services.[100] Dr. Genthe's report included a psychosocial history, a treatment history, an education and work history, a substance use history, a mental status examination, a diagnosis, and a medical source statement.[101] Plaintiff reported that she was divorced and homeless at the time of her examination, living on the street and periodically staying at a shelter or with friends.[102] She reported that she was incarcerated for 5 years for bank fraud and that she had no difficulty getting along with others.[103] Plaintiff had no psychiatric hospitalizations but had been in treatment in the past and been prescribed psychotropic medication but at the time of the examination was neither in treatment or medicated.[104] Plaintiff reported that she went to the 10th grade in school and later got a GED, and that she had last

---

[99] *Id.*

[100] AR 667-674.

[101] *Id.*

[102] AR 667.

[103] *Id.*

[104] AR 668.

worked in 2012 at a job she held for 4 years and left due to a back injury.[105]
Plaintiff reported a remote history of alcohol and substance use, as well as
infrequent use of marijuana.[106] Plaintiff reported she was able to manage ordinary
activities of daily living.[107]

On mental status examination, Plaintiff's speech was a normal rate and
fairly well articulated but she provided an excessive amount of detail; she was
cooperative and appeared genuine; her thought content was free of hallucination
and delusion but her thought process was abnormal with a tangential and
circumstantial process; she was oriented; her perception was normal; her memory
was impaired with good immediate recall but very poor short-term recall and poor
long term recall; she had a normal fund of knowledge; her concentration was
limited and she had significant difficulty following the conversation; her ability to
think abstractly was limited; and her insight and judgment was fair to poor.[108]

Dr. Genthe opined that Plaintiff had a moderate limitation in completing the
following activities: understand, remember and persist in following short
instructions; perform routine tasks without special supervision; make simple work-

---

[105] *Id.*

[106] *Id.*

[107] AR 668-669.

[108] AR 671-673.

related decisions; and ask simple questions.[109] Dr. Genthe opined that Plaintiff would have a marked limitation in the following activities: perform tasks within a schedule, maintain attendance, and be punctual; learn new tasks, be aware of hazards; and set realistic goals and plan independently.[110] Dr. Genthe opined that Plaintiff would have a severe limitation in the following activities: understand, remember and persist in following detailed instructions; adapt to changes in a routine work setting; communicate and perform effectively; maintain appropriate behavior; and complete a normal work day or work week without interruption.[111] Dr. Genthe diagnosed major depressive disorder, ADHD, and panic disorder.[112] He recommended continued treatment and stated that Plaintiff was unlikely to function adequately or consistently in a work setting until her psychological symptoms were managed more effectively.[113]

     *d.*   <u>*LCSW White*</u>

     On November 30, 2022, Bailey White, LCSW, performed a comprehensive diagnostic assessment while Plaintiff was incarcerated.[114]  LCSW White opined

---

[109] AR 670.

[110] AR 670-671.

[111] *Id.*

[112] AR 671.

[113] *Id.*

[114] AR 694-701.

that Plaintiff posed no risk to others but had a moderate risk of suicide, and that a mitigation plan should be in place to periodically monitor suicide risk.[115] LCSW White noted a prior history of alcohol and substance abuse.[116] On mental status examination, Plaintiff had fair eye contact; was groomed but wrung her hands; was oriented; had no hallucinations or delusions; had an irritated and agitated mood; had a dramatic manner; had paranoid and perseverative thought content with flight of ideas and irrelevant answers; had accelerated and pressured speech; was distractable and internally occupied; had average intelligence but impaired insight and judgment; had restless motor function; and had soft spoken speech.[117]

LCSW White noted symptoms of mania, anxiety, and PTSD.[118] Plaintiff reported that she had an adverse response to a dentist because she did not trust doctors after being in a coma for 3 days following surgery.[119] She reported auditory hallucinations and a belief that doctors were trying to kill her, as well as projecting blame for her circumstances onto others.[120] LCSW opined that Plaintiff met the

---

[115] AR 697.

[116] *Id.*

[117] AR 697-698.

[118] AR 699.

[119] *Id.*

[120] *Id.*

criteria for PTSD and borderline personality disorder.[121] LCSW White

recommended mental health counseling, random drug testing, anger management,

dialectical behavior therapy, and substance abuse treatment.[122]

>        e.    _Dr. Dyck_

On June 30, 2017, Plaintiff was examined by consultative examiner Dennis

Dyck, PhD, at the request of the Commissioner.[123] Plaintiff reported that she had

problems with her mental health, memory, back pain, and seizures.[124] Dr. Dyck

reviewed medical records from River Front Medical Center prior to the

examination.[125] Plaintiff reported that she began having issues with her health and

memory in 2012, that she had made unwise decisions in the last year and did not

understand her decline in current circumstances, that she was not currently taking

medication or in treatment, that she had a history of substance use, and that she

lost everything after a back injury in 2012.[126] Dr. Dyck noted that Plaintiff

reported a history of homelessness, could not recall the ages of her five children,

reported holding a job in the past and doing work from home more recently,

---

[121] AR 700.

[122] _Id._

[123] AR 652-656.

[124] AR 652.

[125] _Id._

[126] AR 652-653.

reported a GED but was a poor historian; reported taking psychotropic medications in the past including Cymbalta, Seroquel, and hydroxyzine; and reported she recently stopped taking medication after being hospitalized for cardiovascular issues.[127] On mental status examination, Dr. Dyck found Plaintiff was well-groomed but was fidgeting; was cooperative and showed no sign of malingering; had a flat affect and stated that she was confused and had been told that she was missing for three months; endorsed delusions of being poisoned, and suffered hallucinations but denied suicidal or homicidal ideation; had circumstantial speech; was oriented; had good immediate and recent memory but limits in remote memory; had a limited fund of knowledge; was able to concentrate; and was unable to think abstractly.[128]

Plaintiff reported living with an elderly couple and stated that she was able to manage most activities and said in her free time she works on the computer and plays on X-box.[129] Dr. Dyck noted that Plaintiff had decompensated in the past in a work environment.[130] Dr. Dyck diagnosed PTSD, chronic, severe; and a rule out diagnosis of dissociative disorder with amnesia; and opined that her prognosis was

[127] AR 653.

[128] AR 653-654.

[129] AR 654.

[130] *Id.*

poor to guarded.[131]  Dr. Dyck opined that Plaintiff had intact ability to reason, adaptation skills, memory, concentration, and persistence.[132] He opined that Plaintiff would have marked impairments in the following: the ability to interact with coworkers and the public, the ability to maintain attendance, the ability to complete a normal work day or work week without interruption from symptoms, and the ability to deal with the usual stress encountered in the work place.[133]

### f.    *Dr. Mayers*

On October 20, 2020, Plaintiff was examined via video by consultative examiner Kathleen Mayers, PhD, at the request of the Commissioner.[134] Prior to the examination, Dr. Mayers reviewed the May 2020 evaluation of Dr. Genthe.[135] Plaintiff reported that she had no psychiatric hospitalizations but had psychiatric treatment in the past and was planning to restart it; that she used alcohol and drugs in the past but presently only took marijuana for pain; that she has back pain and degenerative disc disease and head trauma as a teenager and needs surgery but does not want to be given anesthesia because she was in a coma for 3 days after a prior surgery; that she has no relationship with her parents, siblings,

---

[131] *Id.*

[132] AR 655.

[133] *Id.*

[134] AR 686-691

[135] AR 686.

or children; that she completed high school and a technical college; that she was in prison for four years for bank fraud; and that she was last employed in 2012 in a job she had held over 3 years but she suffered a back injury.[136]

On mental status examination, Plaintiff was well groomed, cooperative and maintained good eye contact; her speech was logical but occasionally tangential; her mood and affect were depressed; she described herself as anxious; she reported memory lapses; she had signs of PTSD such as intrusive memories, startle response, and hypervigilance; she denied current suicidal or homicidal thoughts; she was oriented; her concentration was average; her memory was variable, ranging from poor to average depending on the task; her fund of knowledge was average; and her judgment was average and her insight fair.[137]

Dr. Mayes diagnosed major depressive disorder; generalized anxiety disorder with panic attacks; alcohol use disorder, in remission; features of PTSD; and rule out neurocognitive disorder.[138] Dr. Mayes opined the following:

> In my opinion, she needs supportive mental health therapy services. This will be a slow process because she is not willing to take prescribed medication again. Eventually, she is likely to be able to maintain a routine work schedule, follow instructions, manage minor work-related stressors, interact appropriately with others, and function in a productive manner, but in my view, her depression and

---

[136] AR 686-688.

[137] AR 687-689.

[138] AR 690.

anxiety disorders need to be managed and treated effectively for her to reach this point.[139]

4.    Analysis

The ALJ found that Plaintiff had no severe mental impairment, despite the fact that every source who examined Plaintiff or rendered an opinion opined that Plaintiff had a moderate or marked limitation in at least one of the four functional areas.

Initially, the Court notes that the ALJ's finding that Plaintiff was able to easily remember facts, interact with others, and participate in her hearing is not supported by the record. Plaintiff's first hearing started late because Plaintiff went to the wrong location and had to be redirected by her attorney.[140] At both hearings, she repeatedly implied in her testimony that she believed that her doctors had tried to kill her because she was in a coma after a surgery and because her condition worsened after she underwent an MRI.[141] She incorrectly identified SSA's consultative examiner Kathleen Mayes, PhD, who she had seen less than a year prior, as a DSHS doctor named "Barbara."[142] When she appeared for her second hearing while incarcerated, she was not under the influence of any substance and

---

[139] AR 691.

[140] AR 179.

[141] AR 181, 182, 210, 216-217.

[142] AR 184.

1   was taking medication, but she was confused and believed that the hearing was

2   related to the appeal of her termination of benefits.[143]  To the extent that the ALJ

3   reasoned that Plaintiff had no trouble recalling information at the hearing;

4   interacting with others at her hearing; or concentrating, persisting and

5   maintaining pace at the hearing, the ALJ was in error.[144]

6       The ALJ failed to consider relevant evidence with regard to the functional

7   area of understanding, remembering, or applying information.  For instance, she

8   failed to consider that Plaintiff did not accurately remember the place of her

9   hearing and the relevant medical information, as noted above.  She also did not

10  consider that when examined by Dr. Genthe, Plaintiff's memory was impaired with

11  good immediate recall but very poor short-term recall and poor long-term recall;

12  she had a normal fund of knowledge; her concentration was limited, and she had

13  significant difficulty following the conversation; her ability to think abstractly was

14  limited; and her insight and judgment were fair to poor.[145]

15      The ALJ also failed to consider that when examined by LCSW White

16  Plaintiff had paranoid and perseverative thought content.[146] Dr. Dyck noted that

17  Plaintiff was a poor historian and that on mental status examination she had good

18  _____

19  [143] AR 206-207.

20  [144] AR 50-51.

21  [145] AR 671-673.

22  [146] AR 697-698.

23

DISPOSITIVE ORDER - 30

immediate and recent memory but limits in remote memory.[147] The ALJ also
ignored Dr. Mayes' finding that on mental status examination Plaintiff's memory
was variable, ranging from poor to average depending on the task.[148]  As a whole,
the record does not support the ALJ's finding that Plaintiff had a mild limitation in
the functional area of understanding, remembering, or applying information.

In reasoning that Plaintiff had a mild limitation in interacting with others,
the ALJ failed to consider evidence regarding paranoid and obsessive thoughts on
Plaintiff's part.  She did not consider evidence that Plaintiff is unable to have a
relationship with her parents, her siblings or her own children, and is estranged
from her entire family.[149] As noted above, Plaintiff testified throughout both
hearings that she thought medical doctors were trying to kill her. Plaintiff reported
to LCSW White that doctors were trying to kill her.[150] Dr. Dyck also noted that
Plaintiff "endorsed delusions of being poisoned."[151] This does not constitute
substantial evidence to support a finding that Plaintiff's limitation in interacting
with others is mild.

---

[147] AR 653-654.

[148] AR 687.

[149] AR 686-688.

[150] AR 699.

[151] AR 654.

As to the functional area of adapting and managing oneself, the ALJ did not consider LCSW White's statement that Plaintiff struggled with self-care or the references in the record to bouts of homelessness.[152]  When considered as a whole, the record does not support the ALJ's finding that Plaintiff had mild limitations in all four functional areas.

Additionally, there are certain consistencies in the examinations which were not considered by the ALJ both when performing the psychiatric review technique and when considering the medical opinions. For example, all examiners noted circumstantial and tangential thought process.[153]  All noted depressed mood, flat affect, anxious mood, and variable memory as well.[154]

Although step-two errors are often harmless,[155] in instances when the ALJ considered Plaintiff's other mental impairments later in the sequential evaluation, here, the ALJ's step-two error was not harmless.  The ALJ did not consider any mental impairment in the later steps of the sequential evaluation.[156] The Court

---

[152] AR 584.

[153] AR 671, 697, 653, 687.

[154] *Id.*

[155] *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

[156] *See Burch* 400 F.3d at 2  682 ("Assuming without deciding that this omission constituted legal error [at step two], it could only have prejudiced Burch in step

concludes that the case should be remanded and the ALJ should be directed to develop the record as necessary and to make a proper determination at step two and all subsequent steps.

**B.    Medical Opinions: Plaintiff established consequential error.**

As noted above, the ALJ erred in failing to properly consider the consistency of the medical opinions as is required under the regulations.[157]  Because the Court has remanded the case for consideration of the record as a whole, the ALJ will be required to consider the medical opinions, the third-party testimony, and the credibility of Plaintiff's subjective complaints.

**C.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[158] When the court reverses an ALJ's

_____

three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor.").

[157] An ALJ must consider and articulate how persuasive she found each medical opinion, including whether the medical opinion was consistent with and supported by the record. 20 C.F.R. §§ 404,1520c(a)–(c), 416.920c(a)-(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[158] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

decision for error, the court "ordinarily must remand to the agency for further proceedings."[159]

The Court finds that further development is necessary for a proper disability determination. Here, it is not clear what, if any, additional limitations are to be added to the RFC. Therefore, the ALJ should properly consider the effects of all Plaintiff's medically determinable and severe impairments, reevaluate the opinion evidence, and make findings at each of the five steps of the sequential evaluation process.

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

---

[159] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke* 379 F.3d at 595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

DATED this 4ᵗʰ day of September 2024.

_____
EDWARD F. SHEA
Senior United States District Judge